CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 1 1 2008

JOHN F CORCORAN, CLERK
BY: /s/ K. Bolton
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | | |
|---|---|---|
| **JOHN R. COFFEY,** | ) | Case No. 5:07cv00029 |
| *Plaintiff* | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) By: | Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| *Defendant* | ) | |

The plaintiff, John R. Coffey, brings this action pursuant to 42 U.S.C. § 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying his claim for disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. 405(g).

The Commissioner's Answer was filed on July 16, 2007 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered two days later, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Addressing the reasons why she believes the final decision of the Commissioner ought to be either reversed or remanded, the plaintiff's memorandum of points and authorities was filed on

August 17, 2007. Therein, he contends that the administrative law judge ("ALJ") erred in concluding that he retained the functional ability to perform a range of light work activity and in failing to give the requisite decisional weight to the medical opinions and conclusions of his treating physicians. No written request was made for oral argument.[1] On October 10, 2007 the Commissioner filed his Motion for Summary Judgment and supporting memorandum. After making a thorough review of the administrative record, the following report and recommended disposition are submitted.

I.  **Standard of Review**

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement to a period of disability insurance benefits pursuant to the Act. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (*quoting Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 direct that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

2

[its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

The record shows that the plaintiff protectively filed his application for a period of disability insurance benefits on or about July 20, 2004 claiming a June 13, 2003 onset date. (R.14,61,109-116.) Therein, he based his application on the what he contended to be the functional limitations resulting from a work-related injury to his left shoulder, ribs, neck, head, and heart. (R.109-110.) After his application was denied, both initially and on reconsideration, an administrative hearing was held on April 19, 2006 before an administrative law judge ("ALJ"). (R.14,25-38,43-44,47-53,60,221-247.) At the hearing the plaintiff was present, testified, and was represented by counsel. (39-46,221-247.) Utilizing the agency's standard five-step inquiry, [2] the plaintiff's claim was subsequently denied by written administrative decision on September 1, 2006. (R.14-21.)

---

[2] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3$^d$ 171, 177 (4th Cir. 2001). It begins with the question of whether the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry requires a determination of whether, based upon the medical evidence, the individual has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d). If so, the person is disabled; if not, step-four is a consideration of whether the person's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F.R. § 404.1520(f).

At the first two decisional steps, the ALJ found that the plaintiff had not engaged in substantial gainful work activity at any decisionally relevant time and that he in fact had "severe" impairments.[3] (R.16-17.) In the ALJ's opinion, the plaintiff's degenerative disc disease, cervical spondylosis (osteoarthritis) and the residual effects (left shoulder rotator cuff tear and clavicle fracture) of a work-related injury on June 13, 2003 were such that each could be expected to interfere to some degree with the plaintiff's ability to work. (R.16-17.) *See Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). The ALJ, on the other hand, concluded that the plaintiff's hypertension was controlled with medication and would not significantly interfere with the plaintiff's ability to function in a work-like setting. (*Id.*)

At step-three, the ALJ found that the plaintiff had exhibited no condition, either individually or in combination, which satisfied the requirements of a medical listing. As part of this step-three finding, the ALJ noted that he "specifically" considered listings 1.02 and 1.04 "in light" of the imaging and physical examination results contained in the medical record. (R.17.)

After next determining that the plaintiff was functionally unable to perform his strenuous past relevant work installing and repairing utility cables, the ALJ concluded at step-five that the plaintiff

---

[3] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *See also* 20 C.F.R. § 404.1520(c).

4

retained the physical ability to do a limited range of light work [4] which required only the use of his dominant right upper extremity and no working, reaching or lifting above shoulder level (R.17,19.)

After issuance of this unfavorable decision, the plaintiff made a timely request for Appeals Council review. (R.9-10.) The request was denied, and the ALJ's decision now stands as the Commissioner's final decision. (R.4-6.) *See* 20 C.F.R. § 404.981.

### III. Facts

The plaintiff was born in 1952 and was fifty-three years of age [5] at the time of the administrative hearing. (R,20,115,240.) He has a high school education, and his past relevant work has all involved the installation and repair of utility cables. (R.19-20,78-84,110-111,118,225-227.) As normally performed this work is considered to be semi-skilled and medium to heavy in exertional level. (R.240-241.) As actually performed by the plaintiff the work was exertionally heavy. (R.79-80,110-111,225-227, 241.)

On June 13, 2003 the plaintiff sustained a significant work-related injury, when he slipped and fell from the rear of a pick-up truck. (R.17,139.) He was initially treated in the emergency room

---

[4] Light work activity involves lifting no more than twenty (20) pounds with frequent lifting or carrying objects weighing up to ten (10) pounds, and a job in this exertional category generally also requires a good deal of walking or standing or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] At this age the plaintiff is classified as a *"person closely approaching advanced age,"* and for persons in this age range (age 50-54) the agency will consider that age along with a severe impairment(s) and limited work experience may seriously affect one's ability to adjust to other work. 20 C.F.R. § 404.1563(d).

5

at Martha Jefferson Hospital for a non-displaced fracture of the proximal portion of his left clavicle. (R.139-141.) During the course of his follow-up orthopaedic treatment by Dr. Carrington Harrison, the plaintiff was found to have also sustained a complete left rotator cuff tear, non-displaced left 4th and 5th rib fractures, and extensive left chest bruising. (R.157-158.) An EKG and a MRI in July 2003, also established that the plaintiff had pre-existing ischemic heart disease and degenerative cervical disc disease. (R.161-162, 165-168.)

Pursuant to an agreement with the workers' compensation carrier, the plaintiff was awarded both medical and compensation benefits pursuant to the Virginia Workers' Compensation Act. (R.62.) Va. Code Ann. §§ 65.2-100 *et seq.* (1950, as amended)

During the first year following his industrial injury, the plaintiff's orthopaedic condition and post-injury recovery were primarily monitored by Dr. Harrison (143-168) and on occasion by his primary care physician (R.125). In addition, he was seen by Dr. David Karaffa for a neurologic consultation and assessment in August 2003 (R.169-170) and by Dr. Lee Hereford for a consultive orthopaedic examination and assessment in January 2004. (R.171-177.)

Dr. Karaffa observed that the plaintiff evidenced no apparent distress and that he "had alcohol on his breath." (R.169-170.) On neurologic examination, Dr. Karaffa found the plaintiff to exhibit no loss on motor strength in either upper extremity, but to have "severe" left clavicle muscle spasms. (R.170.)

Consistent with his injury and subsequent inactivity, when the plaintiff saw Dr. Hereford for an orthopaedic examination and evaluation several months later, the plaintiff was found to exhibit right shoulder muscle atrophy, chest muscle atrophy on the left and right, a deformity of the distal one-third of the left clavicle, and chest wall tenderness on palpitation. (*Id.*) Dr. Hereford also noted that the plaintiff exhibited a full range of cervical spine motion, a full range of motion in both shoulders, no motor or sensory deficits in either shoulder, and no rib deformation. (*Id.*) The remainder of his musculoskeletal examination was also essentially normal. (*Id.*)

Based on his detailed physical examination and a review of the plaintiff's injury-related medical history and treatment, Dr. Hereford concluded that the plaintiff's multi-level disc disease was a degenerative condition which was in part due to a congenital deformity. (*Id.*) Directly related to the plaintiff's work-related injury, Dr. Hereford concluded that the full thickness rotator cuff tear was amenable to surgical repair, that there was no medical contraindication for this procedure, and that the plaintiff was functionally able to perform work activities requiring only limited use of his left arm even without surgical repair of his torn rotator cuff. (R.173-177.)

Shortly after Dr. Hereford's consultive examination and assessment, a state agency physician reviewed the plaintiff's medical records and concluded that he retained the functional ability to do light work [6] requiring no overhead reaching or fine manipulation. (R.178.) A later more detailed

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a person] must have the ability to do substantially all of these activities. If someone can do light work, [the agency will] determine that [the person] can also do sedentary work, unless there are additional limiting factors such as loss of

7

assessment and review of the plaintiff's functional limitations by state agency physicians in January and June 2005 reached essentially the same conclusion. (R.201-209.)

An April 8-9, 2004 Isernhagen Functional Capacity Evaluation [7] at Augusta Medical Center also demonstrated the plaintiff's residual capacity to perform a range of work activities. (R.179-188.) This two-day testing regime confirmed the plaintiff's left shoulder and lower back discomfort during test items involving elevated work, kneeling, repetitive squatting and static bending, although it was reported that he was able to tolerate and "to work through" this discomfort. (*Id.*) It also demonstrated the plaintiff's limited ability to lift and carry more than thirty pounds "due weakness in the left shoulder," his significantly limited ability to do any activity above shoulder height using his left arm, his limited ability to bend forward while sitting or standing, his limited ability to squat repetitively, and his poor balance. (R.179-182.) In addition, the stair climbing test item produced an elevated heart rate, and it was noted that "cardiac precautions" would need to be observed in connection with any hill walking or stair climbing. (*Id.*)

Based on an assessment of the testing results, including the plaintiff's demonstrated restrictions and limitations, it was concluded that he retained the ability to meet the physical

---

fine dexterity or inability to sit for long periods of time.

[7] The Isernhagen Work System functional capacity evaluation used for this evaluation is a two-day assessment of an individual's functional capabilities. It is designed to measure safely and objectively: repetitive lifting capacity at various levels; repetitive push, pull, and carrying capacities; hand grip strength; tolerance for elevated work; prolonged trunk flexion in sitting and standing; prolonged trunk rotation in sitting and standing; prolonged crawl, knee and sustained crouch positions. (R.179-188.)

8

demands of "medium" work,[8] as that term is defined by the Department of Labor; [9] with limited overhead activities and with balance and cardiac precautions. (R.180.)

After reviewing the results of the Isernhagen evaluation with the plaintiff, Dr. Harrison noted in his records that he was "mostly in agreement" with it. (R.145.) And due to the demonstrated functional limitations, Dr. Harrison also noted that the plaintiff, in his opinion, was no longer capable of doing construction-type work or of operating power equipment safely. (*Id.*)

When seen in January 2005 for a consultive examination by Dr. Mammen Mathew, the plaintiff presented with complaints of stiffness in his left shoulder, neck and in his lower back. (R.193.) In addition he complained of spasticity in his left leg, pain in both feet, and headaches. (R.193-194.) On examination, Dr. Mathew noted several abnormalities, including upper extremity muscle atrophy (greater on the left), some loss of upper extremity motor strength "secondary to pain," "significant limitation" in the plaintiff's range of motion, and cervical tenderness at C7/T1 on palpitation. (R.192-199.) X-rays taken in connection with this examination disclosed some spinal disc space narrowing, some evidence of traumatic arthritis in the left shoulder joint, and a "small 2 mm soft tissue foreign body" in the fourth digit of the left hand. (R.200.)

---

[8] "Medium Work - Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work." U.S. Dept. Of Labor, *Dictionary of Occupational Titles*, Appx. C, § IV (4th ed. 1991).

[9] "The strength rating [used by the Department of Labor] is expressed by one of five terms: Sedentary, Light, Medium, Heavy, and Very Heavy." Determination of the overall rating is based on an evaluation of the worker's activities, such as standing, walking, sitting, lifting, carrying, pushing, pulling, operating controls, *etc.* U.S. Dept. Of Labor, *Dictionary of Occupational Titles*, Appx. C, § IV (4th ed. 1991).

9

The office notes and records of Dr. Lynn Moore, the plaintiff's primary care physician, show that his medical condition has been generally monitored on a monthly basis, more or less, since his injury. (R.122-138,189-191,216-218.) In large measure these are noted to be "maintenance visits" or for treatment of hypertension. (*Id.*) Since his injury, these records also demonstrate Dr. Moore's treatment and the plaintiff's ongoing injury-related problems principally with left shoulder pain and the attendant functional limitations. (*Id.*) Referencing Dr. Moore's February 2006 progress note, the ALJ pointed-out in his decision that just two months before the administrative hearing the plaintiff reported that he was "doing OK except for back pain and stomach pain." (R.217.)

At the hearing, the plaintiff testified that since 1971 he has worked installing and repairing underground cable and wiring, most recently as a "working foremen." (R.224-227.) As performed, he described this work as involving regular heavy lifting and arduous physical labor. (*Id.*) He described his injuries and residual problems resulting from the 2003 injury; he described in some detail the extensive right-sided injuries he received "years ago" when he "rolled a tractor"; he testified that he had been awarded workers' compensation benefits, and he stated that the workers' compensation carrier had employed a company to help him find a job. (R.227-233,235-237.)

In support of his application, the plaintiff's wife also testified. She stated that her husband "seems to be in constant pain," that his medications make him drowsy, that he "basically" sits and tries to get comfortable, and that he is functionally able to do no more that "piddle" for fifteen or twenty minutes at a time. (R.238-240.)

10

Vocational testimony at the hearing was given by Gerald K. Wells. In addition to testifying concerning the plaintiff's vocational profile and relevant work history, Dr. Wells gave employability testimony in response to two hypothetical questions involving a person with the plaintiff's vocational profile. (R.240-246.)

The first of which was propounded by the ALJ and asked the vocational witness to assume the individual was right-hand dominant with an ability, "as Dr. Hereford indicated," to do light work and with limited left upper extremity use, as "indicated in [the Isernhagen] functional evaluation," including a ten pound lifting restriction, no outstretched use of the left upper extremity and no use above chest level. (R.241-242.) In response, Dr. Wells testified that such an individual could perform a number of jobs that exist in significant numbers in the national and Virginia economies, including work as a cashier at both the light and sedentary exertional levels, work as a service station attendant, and work as a counter clerk. (R.242-243.) A second hypothetical question propounded by the plaintiff asked the vocational witness to assume an individual with the significant further deficits, both in concentration and in persistence due to fatigue and medication, described by the plaintiff in his hearing testimony and noted in the history he gave to Dr. Mathew. (R.242-245.) Such an individual, in the opinion of Dr. Wells, could not perform any identifiable work on a regular and sustained basis. (R.244.)

**IV.    Analysis**

11

The plaintiff's basic argument on appeal is that the ALJ's non-disability conclusion was predicated on an incomplete consideration of his multiple medical problems and their attendant functional limitations. A full and fair consideration of his significantly restricted range of spinal motion and the lower lumbar tenderness which were noted by Dr. Mathew (R.195,199), of his persistently abnormal peripheral nerve processes which were noted by Drs. Moore and Mathew (R.189-191,195-196), of his diabetic and cirrhotic conditions which were noted by Dr. Moore (R.216-220) and of his impaired cardiovascular and pulmonary reserves which were noted by Dr. Harrison (R.144,148), the plaintiff's argument requires a fully favorable decision both at step-three, pursuant listing 1.04, and alternatively at step-five.

A full review of the record, however, fails to support either contention. The plaintiff's degenerative disc disease, including his cervical disc disease, was described by the radiologist in a September 2003 MRI (R.161-162); his abnormal peripheral nerve processes were described by Dr. Karaffa in August 2003 (R.169-170); and his cardiopulmonary abnormalities were described in Dr. Harrison's records at least as early as February 2004 (R.144,148). These findings were all included Dr. Harrison's records and considered by him, as the ALJ noted, as part of his orthopaedic determination that the plaintiff had improved to the point that he could do some type of work. (R.18, 151,161-162.) Likewise, they were explicitly considered by Dr. Hereford as part of his consultive evaluation and functional assessment in January 2004. (R.173-174.) The Isernhagen evaluation also recognized, both explicitly and implicitly, their impact on the plaintiff's residual functional capacity. (R.181-182,184-187.)

12

In passing, it is worth mentioning that the plaintiff's reference to his diabetic and cirrhotic conditions are totally without relevance and merit. The record contains absolutely no medical support or suggestion that these conditions, or either of them, significantly restricted his ability to perform work-related activities in any meaningful way.

Directly related to his claim that his condition merited a favorable step-three decision, the plaintiff cites the court to the September 2003 cervical MRI findings (R.161-162) and to his description of the "neuroanatomical distribution of his pain." In combination, he argues that these demonstrate a "severe degenerative disc disease with multilevel cord and nerve root impingement" sufficient to satisfy listing 1.04(A). Among other criteria, however, this listing also requires medical evidence of sensory or reflex loss related to the degenerative disc disease. 20 C.F.R., Part 404, subpart P, Appx. 1 § 1.04(A). Not only has the plaintiff failed to direct the court to anything in the record to support this criterion, but the record contains significant contrary evidence showing that they were both intact. (R.195,197).

The plaintiff's argument that the ALJ erred at step-five of the decisional process by failing to "consider all of [his] limitations" focuses on what he contends to have been a fatally flawed vocational testimony given in response to an incomplete hypothetical question. *See English v. HHS*, 10 F.3$^d$ 1080 (4th Cir. 1993) ( "In questioning a vocational expert, . . . the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment.")

13

An ALJ's hypothetical question, however, does not need to contain an exhaustive list of impairments, it is appropriate, if it fairly sets-out the individual's general impairments. *See Walker v. Bowen*, 889 F.2$^d$ 47, 50 (4th Cir. 1989). Reviewed pursuant to this standard, the ALJ's question was more than adequate.

In posing his question to the vocational witness the ALJ referenced all of the impairment-related limitations identified by Dr. Hereford and by the Isernhagen evaluation, and he elected to use Dr. Hereford's more restrictive "light" exertional limitation. (R.240-241.) In response, the vocational witness identified several jobs that exist in significant numbers in Virginia which could be performed by such an individual. (R.241-243.) While the ALJ did not give the vocational witness an exhaustive list of every impairment identified in the medical records, he appropriately exercised "some discretion to craft [his] hypothetical question to communicate to the vocational expert what the claimant [could] and [could not] do." *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364 (4th Cir. 2006). "[I]t is the [plaintiff's] functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Id.* And it is as well the responsibility of the ALJ to weigh the evidence, resolve any conflicts, and decide which of the plaintiff's claims merit inclusion in the hypothetical question presented to the vocational witness, *See Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

A review of the record in this case, therefore, compels the conclusion that the Commissioner's final decision is supported by substantial evidence. The plaintiff obviously sustained a significant injury in July 2003 and has developed some significant other health problems

14

which require medications and a certain amount of ongoing monitoring and treatment by his primary care provider. Nevertheless, the record contains substantial evidence to support the determination that the plaintiff, through the decision date, retained sufficient functional capacity to perform the limited range of light or sedentary work outlined at the hearing by the vocational witness.

## V.   Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1.   The Commissioner's final decision considered adequately all of the evidence in this case;

2.   The Commissioner's final decision is supported by substantial evidence;

3.   The ALJ gave proper consideration and weight to the plaintiff's multiple medical problems, including those that were accident related and non-accident related;

4.   The ALJ gave proper consideration and weight to the plaintiff's functional limitations, including those that were accident related and non-accident related;

5.   The ALJ gave proper consideration and weight to the plaintiff's pain and other subjective complaints;

6.   Substantial medical and activities evidence exists to support the findings concerning the plaintiff's symptoms and functional limitations;

7.   Substantial evidence supports the findings at step-three of the decisional process;

8.   Substantial evidence supports the findings at step-five of the decisional process;

9.   Substantial evidence supports the finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

15

10. Substantial evidence supports the finding that through the decision date the plaintiff retained the residual function capacity to perform a limited range of light and sedentary work activity;

11. The plaintiff has not met his burden of proving disability; and

12. The final decision of the Commissioner should be affirmed..

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision fo the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C.

§ 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 10th day of March 2008.

s/ James G. Welsh<br>United States Magistrate Judge